UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GLOBE AMERICAN CASUALTY COMPANY, d/b/a GO AMERICA AUTO INSURANCE, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 2:02-CV-418 PS |
| CAROLYN REYNOLDS, MATTHEW A. REYNOLDS, JOHN REYNOLDS, LAWRENCE HARRELL, and FLORENCE HARRELL, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Globe American Casualty Co. ("Globe") brought this action against the Defendants seeking a declaration that the insurance policy Globe issued to Defendant Carolyn Reynolds does not provide coverage for damage arising out of a car accident between Matthew Reynolds and Lawrence and Florence Harrell. This matter is currently before the Court on Globe's Motion for Summary Judgment. [Doc. 36]. Because we find that Matthew and/or John Reynolds were not insured persons under the Globe insurance policy and because the Chrysler Sebring that Matthew Reynolds was driving was not an insured car under the policy, Globe's Motion for Summary Judgment is granted.

**I. BACKGROUND**

**A.    The Accident**

On Monday, June 10, 2002, Defendant Matthew Reynolds was driving a 1997 Chrysler

- 1 -

Sebring owned by John Reynolds to his nursing clinicals.  Matthew and John Reynolds are brothers.  Carolyn Reynolds is their mother.  At his deposition, Matthew testified that he usually drives his mother's Chevy Geo Tracker to clinicals, but on Mondays and Tuesdays, when his mother works later than 7:00 a.m., Matthew drives John's Sebring.  (M. Reynolds Dep. at 28).  On this particular Monday morning, Matthew was involved in an automobile accident in the Sebring with Co-Defendants Lawrence and Florence Harrell on Burr Street in Gary, Indiana.

At the time of the accident, Matthew was living at the home of his mother in Gary, Indiana.  His brother, John, was living in Merrillville, Indiana.  Matthew was not listed on the Declarations page of his mother's automobile insurance policy with Globe.    John was also not listed on the Declarations page.  Additionally, John's Sebring was not listed as an "Insured Automobile" on Carolyn's insurance policy.

Lawrence and Florence Harrell brought a lawsuit in Lake County Superior Court against Matthew and John in which they asserted various claims against the brothers arising out of the June 10, 2002 accident.  Globe then commenced suit in this Court, seeking a declaration that Globe owes no insurance coverage or defense to either Matthew or John for claims arising from the suit brought by the Harrell's under Ms. Reynolds' insurance policy.  Globe further asks this Court to declare the insurance policy void from its inception due to alleged material misrepresentations by Ms. Reynolds in her application for insurance.

**B.**     **The Application for Insurance**

On May 25, 2001, Carolyn Reynolds applied for an automobile insurance policy with Globe, covering the period from May 26, 2001 to May 26, 2002.  The application was completed by Joi Wilson, President of the Karin Wilson Insurance Agency, at the instruction of Ms.

Reynolds. Ms. Reynolds testified at her deposition that Joi Wilson was well-acquainted with the Reynolds family and that Wilson had completed automobile insurance applications for Ms. Reynolds several times in the past. (C. Reynolds Dep. at 30).

One section of the application requires applicants to list all family members, residents of the household age 14 and over, and any other non-resident drivers. In response to this section, Wilson listed Ms. Reynolds and her daughter, Michelle Reynolds. Michelle Reynolds was not living in the household at this time. Matthew Reynolds, although living in the household and over 14 years of age at this time, was not listed. Ms. Reynolds testified at her deposition that she does not remember being asked to list the family members living in her household, and that she believed this information had been accurately updated by Wilson. (C. Reynolds Dep. at 30, 44-45).

The vehicle listed on the application was a 1990 Chevrolet Lumina. Wilson completed the application in accordance with the information given to her by Ms. Reynolds, and Ms. Reynolds signed the completed application. Wilson then submitted the application to Globe's underwriting department to begin the policy coverage. On this same date, Ms. Reynolds issued a personal check for $160.00, the first premium installment due of the total yearly premium of $900.00. Tracy Wilson, a project manager and underwriter for Globe asserted in an affidavit that had Matthew Reynolds been added to the policy, the yearly premium would have increased from $900.00 to $2,742.00. (T. Wilson Aff. Ex. H).

The "Agreement and Signatures" section of the application signed by Ms. Reynolds required Ms. Reynolds to sign an acknowledgment that she was providing truthful and complete information to Globe, that she understood that Globe relied on this information in the application

and that the contract of insurance would be deemed null and void if Ms. Reynolds withheld any material information from Globe. (J. Wilson Aff. Ex. A, at 3). In addition, the application required Ms. Reynolds to warrant that all individuals over the age of 14 who were living in the household were named in the application. *Id*. It was obviously important to Globe that it had all the information regarding drivers over the age of 14 because the disclosure of this information drastically changes the premium. Consequently, Globe required Reynolds to certify that the information in the application was accurate. *Id.* **C. The Insurance Policy**

Globe issued the policy to Ms. Reynolds covering the period from May 26, 2001 to May 26, 2002 and renewed the policy until May 26, 2003. The policy provides:

> AGREEMENT
>
> Subject to the terms of the policy, **we** agree to insure **you** for the coverages and limits of liability shown in the Declarations, upon payment of the premium.
>
> DEFINITIONS USED THROUGHOUT THIS POLICY
>
> 1. **"We"**, **"us"** and **"our"** mean the company providing this insurance.
>
> 2. **"You"** and **"your"** mean the insured named in the Declarations and spouse if living in the same household.
>
> \*\*\*
> 6. **"Insured car"** means:
>    a. A **car** described in the Declarations.
>    b. A **"replacement car"** or **"additional car"** if **you** ask **us** to insure it within 30 days after **you** lease it or become its owners.
>    c. A **utility trailer you** own; however, Car Damage Coverage will not apply unless **you** ask **us** to insure the **utility trailer** for Car Damage.
>    d. Any **car** or **utility trailer** while being temporarily used with the owner's permission if such **car** or **utility**

        **trailer** is not owned or leased by **you** or any person living in **your** household and is not available for **your** regular use or such other person's regular use.

***

8.    "Relative" means a person living in **your** household who is related to **you** by blood, marriage or adoption, including a ward or foster child.

***

15.   **"Additional car"** is any **car, utility car** or **trailer**, acquired by **you** during the policy period and not described in the Declarations.

16.   **"Replacement car"** is a **car, utility car** or **utility trailer** acquired by **you** during the policy period which has taken the place of a **car, utility car** or **utility trailer** described in the Declarations.

(Policy, pp. 1-2) (emphasis in original).

With respect to liability coverage, the Policy provides:

COVERAGE A & B LIABILITY COVERAGE

**We** will pay damages for which any **insured person** is legally liable because of **Bodily Injury** (Coverage A) or **Property Damage** (Coverage B) arising out of the ownership, maintenance, or use of an **insured car**.

ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

As used in this Part "**insured person**" means"

1.    **You**.

2.    A person using **your insured car** with your permission and within the scope of that permission.

3.    Any other person or organization for acts or omissions of:
     a.  A person covered under this Part while using **your**

           **insured car** on behalf of such person or organization; or

        b.  **You**, while using any **car** other than **your insured car** if the car is not owned or hired by that person or organization.

4.  With respect to a **car** not owned by **you**, to be an **insured person you** must be using the **car** with the express permission of the owner and within the scope of such permission.

(*Id*. at 2) (emphasis in original).

The Policy also contains an exclusion which provides:

EXCLUSIONS

**We** do not cover:

1.  **Bodily injury** or **property damage** resulting from the ownership, maintenance or use of a vehicle other than **your insured car**.

(*Id*.).

Finally, under the "Other Duties" provisions of the "WHAT TO DO IN CASE OF AN ACCIDENT" section, the policy states that in the event of an accident, the insured must "[s]ubmit to a statement under oath at **our** request." (*Id*. at 1).

The policy renewal that covers the date of the accident describes the insured car as a 1990 Chevrolet Geo Tracker and lists Carolyn Reynolds and Michelle Reynolds as the drivers. Again, Matthew Reynolds, although living in the household and over the age of 14, was not listed as a driver on the policy.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons, Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing there is genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986).

### A. Interpretation of Insurance Contracts

Insurance contracts are governed by the same rules of construction as other contracts. *Bosecker v. Westfield Ins. Co.*, 724 N.E.2d 241, 243 (Ind. 2000).[1] When policy language is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). Generally, the interpretation of an insurance contract is a question of law appropriate for summary judgment, even where a policy is ambiguous. *Id*.

"Under Indiana law, an insurance policy is ambiguous if reasonable persons may

---

[1] As a federal court sitting in diversity, we apply state law – in this case, Indiana's – to resolve substantive questions and federal law to resolve procedural and evidentiary issues. *Erie Ins. Group v. Sear Corp.*, 102 F.3d 889, 891-92 (7th Cir. 1996); *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir. 1994).

honestly differ as to the meaning of the policy language." *Travelers Indem. Co. v. Summit Corp. of Am.*, 715 N.E.2d 926, 936 (Ind. Ct. App. 1999). Policy terms are interpreted from the perspective of an ordinary policyholder of average intelligence. *Asbury v. Ind. Union Mut. Ins. Co.*, 441 N.E.2d 232, 237 (Ind. Ct. App. 1982). An unambiguous provision in an insurance policy must be enforced, even if it results in a limitation of the insurer's liability. *Interstate Auction, Inc. v. Central Nat'l Ins. Group, Inc.*, 448 N.E.2d 1094, 1098 (Ind. Ct. App.1983). Further, a court cannot create an ambiguity where none exists; "if no ambiguity exists the policy will not be interpreted to provide greater coverage than the parties bargained for...." *Alexander v. Erie Ins. Exchange*, 982 F.2d 1153, 1157 (7th Cir.1993).

When interpreting a contract, specific terms of the contract control over general terms. *Arnold v. Burton*, 651 N.E.2d 1202, 1205 (Ind. Ct. App. 1995). "Where parties have agreed to a specific term, an apparently inconsistent general statement must yield to the more specific term." *Id.* at 1205.

**B.    Insurance Coverage or Defense for Claims Arising from the Accident**

Globe's motion for summary judgment raises two issues: 1) whether the Sebring is an insured car under the policy; and 2) whether Matthew and/or John Reynolds are insured persons under the Policy. We take each question in turn.

As an initial matter, we note that the parties do not dispute the meaning of the insurance policy itself. Instead, they disagree as to whether the Policy as applied to the undisputed facts provides coverage. Accordingly, the Court applies the plain meaning of the contract language to the undisputed facts of this case.

1. **<u>Insured Car</u>**

The Defendants do not dispute that the Sebring was not listed on the application or the renewal of the insurance policy. Instead, they contend that the Sebring qualified as an insured car under the portions of Section 6 of the Policy relating to the temporary and irregular use of another's car, specifically Sections 6(b) and 6(d). That section defines an insured car as:

> a. A **car** described in the Declarations.
>
> b. A **"replacement car"** or **"additional car"** if **you** ask **us** to insure it within 30 days after **you** lease it or become its owners.
>
> c. A **utility trailer you** own; however, Car Damage Coverage will not apply unless **you** ask **us** to insure the **utility trailer** for Car Damage.
>
> d. Any **car** or **utility trailer** while being temporarily used with the owner's permission if such **car** or **utility trailer** is not owned or leased by **you** or any person living in **your** household and is not available for **your** regular use or such other person's regular use.

(Policy at 2).

Applying these provisions of Section 6, it is clear that the Sebring simply does not qualify as an insured car. Section 6(b) is inapplicable because the Sebring was not a "replacement car" or "additional car" as defined in Section 6(b). The Policy defines a replacement car as "a **car, utility car**, or **utility trailer** acquired by **you** during the policy period which has taken the place of a **car, utility car** or **utility trailer** described in the Declarations." There is no evidence that Carolyn Reynolds acquired the Sebring to replace her Geo Tracker. Similarly, the Sebring is not an additional car, defined as "any **car, utility car**, or **utility trailer** acquired by **you** during the policy period and not described in the Declarations," because Carolyn Reynolds did not acquire the Sebring, her son John did. Further, even if the Sebring

was an additional or replacement car under the policy, the Policy would still only provide coverage for the Sebring if Carolyn Reynolds asked Globe to insure it within thirty days after she acquired it. There is no evidence that Carolyn Reynolds ever asked Globe to insure the Sebring under her Policy.

Although, as Defendants point out, Section 6(d) most closely addresses this situation, it also fails to create any defense or coverage obligation as to the Sebring. It is true that the Sebring was being temporarily used with the owner's (John Reynolds) permission. However, the deposition testimony of Matthew Reynolds indicates that the Sebring was generally available for his use on Mondays and Tuesdays when driving to his nursing clinicals if his mother needed the Geo Tracker. Under Indiana law, this usage constitutes "regular use."

Indiana courts define regular as "recurring, attending, or functioning at fixed or uniform intervals...constituted, conducted or done in conformity with established or prescribed usages, rules or disciplines." *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind. Ct. App. 1997) (internal citations omitted) (finding "regular" use where the vehicle was only available to the insured while at work). In *Myles v. General Agents Ins. Co. of America, Inc.*, 197 F.3d 866 (7th Cir. 1999), an owner of a used car dealership loaned a car that had been on the lot for resale to his sister for temporary use. The sister's car was being repaired and she used the loaned car solely for transportation to and from work. *Id*. at 866. While driving home from work one day, the sister was involved in an accident. *Id*. She had only been driving the loaned car for a few days. *Id*. at 867. The Court repeated the definition in *Smith* and found that the sister's use of the loaned car constituted regular use as defined within the policy. *Id*. at 869.

Matthew's repeated weekly use of the Sebring on Mondays and Tuesdays is certainly as

- 10 -

regular as the usage addressed by the Courts in *Smith* and *Myles*.  Matthew testified that the car was available for his use whenever his mother worked past 7:00 a.m. on Mondays and Tuesdays. This is clearly indicative of routine use by Matthew Reynolds, not an irregular or unusual use of the Sebring.   Consequently, the Sebring does not qualify as an insured car under the policy definitions.

    **2.**    **Insured Person**

Despite the Sebring clearly being outside the coverage of the Policy, Globe might still be obligated to cover/defend the action if Matthew or John Reynolds is an "insured person."  The Policy clearly defines an "insured person" for purposes of bodily injury and property damage coverage.  Matthew and/or John Reynolds do not fall into any section of that definition. As used in this Part "**insured person**" means"

    1.    **You**.[2]

    2.    A person using **your insured car** with your permission and within the scope of that permission.

    3.    Any other person or organization for acts or omissions of:

        a.  A person covered under this Part while using **your insured car** on behalf of such person or organization;   or

        b.  **You**, while using any **car** other than **your insured car** if the car is not owned or hired by that person or organization.

    4.    With respect to a **car** not owned by **you**, to be an **insured person you** must be using the **car** with the express permission of the owner and within the scope of such

---

[2]"You" is defined as "the insured named in the Declarations and spouse if living in the same household."

permission.

Thus, the Policy provides coverage in three situations: 1) Ms. Reynolds driving her car; 2) a person driving Ms. Reynolds' insured car, the Geo Tracker, with her permission and within the scope of her permission; and 3) Ms. Reynolds herself if she was driving another person's car (such as the Sebring) with the owner's permission and within the scope of such permission.

No provision within the definitions of an insured person can be construed as to provide coverage for Matthew or John Reynolds arising out of the accident. Neither Matthew nor John Reynolds were listed on the Declarations page.  Accordingly, Sections 1, 3(b), and 4 are inapplicable.  Further, as discussed above,  the Sebring was not an insured car under Carolyn Reynolds' policy, and thus, Sections 2 and 3(a ) do not provide coverage to Matthew or John Reynolds.

As Matthew Reynolds was not an insured person and the Sebring was not an insured car under Ms. Reynold's insurance policy, the Court finds that Globe has not duty to defend or indemnify any of the Defendants for claims arising from the accident.[3]

C.      **Material Misrepresentations Render the Policy Void.**

In addition to a declaration of no defense/coverage, Globe also requests this Court to declare Ms. Reynolds' insurance policy void from its inception due to allegedly material misrepresentations made by Ms. Reynolds in her application for insurance.  Specifically, Globe contends that Ms. Reynolds' omission in not listing Matthew Reynolds as a driver on the

---

[3]In the alternative, Globe argues that Ms. Reynolds materially breached the insurance contract by failing to show for a deposition, in violation of the "Other Duties" provisions of the policy.  Globe contends this breach exempts it from providing a defense or coverage relating to the accident.  In light of our disposition of the other issue, we need not address this contention.

insurance application is a material misrepresentation.  As such, Globe maintains that it has the right to declare the policy void due to the language contained within the "Agreements and Signatures" section signed by Ms. Reynolds.

The language within the "Agreements and Signatures" section clearly indicates that the applicant must provide true and accurate information, which the insurance company will rely upon when issuing the policy.  Further, this section makes clear that the "policy shall be null and void if such information is misleading" or if the applicant fails to provide requested information that would "materially affect acceptance by the Company."  (J. Wilson Aff. Ex. A, p. 3).

It is well settled in Indiana that "a material misrepresentation or omission of fact in an insurance application, relied upon by the insurer in issuing the policy, renders the coverage voidable at the insurance company's option." *Jesse v. American Comm. Mutual Ins. Co.*, 725 N.E.2d 420, 423 (Ind. Ct. App. 2000) (citing *Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657, 659 (Ind. 1998)).  A misrepresentation or omission is material "if the fact omitted or misstated, if truly stated, might reasonably influence the insurer's decision whether to issue the policy or to charge a higher premium." *Bennett v. Crownlife Ins. Co.*, 776 N.E.2d 1264, 1271 (Ind. Ct. App. 2002) (quoting *Primerica Life Ins. Co. v. Skinner*, 678 N.E.2d 1140, 1142 (Ind. Ct. App. 1997)).  Here, the premium that Globe would have collected if Matthew Reynolds had been on the policy since its inception, would have increased from $900 per year to $2,742 per year.  This increase, more than doubling the premium cost, is a direct indicator of the materiality of Ms. Reynolds' misrepresentation.

Ms. Reynolds testified repeatedly in her deposition that she did not remember if, at the time of the application, the insurance agent inquired as to the family member occupants of Ms.

Reynolds' household.  Ms. Reynolds also testified that had she been asked, she would surely have provided accurate information regarding those persons living with her.  Unfortunately, whatever misunderstandings Ms. Reynolds may have had with her insurance agent are irrelevant as Ms. Reynolds signed the application, affirming its veracity.  Ms. Reynolds' signature on the application makes her responsible for the misrepresentation, regardless of any misunderstanding with the insurance agent.  *Foster v. Auto-Owners Ins. Co.*, 703 N.E.2d 657, 660 (Ind. 1998) ("It is the duty of every man to read what he signs." ); *see also Federal Kemper Ins. Co. v. Brown*, 674 N.E.2d 1030 (Ind. Ct. App. 1997) (applicant for insurance is chargeable with fraud based on his signature certifying the contents of the application as true and correct).

Because Ms. Reynolds affirmed the contents of the application, she is held to the representations it contained.  As the omission of Matthew Reynolds from the application represented a substantial premium increase, indicative of increased risk to the insurance company, it is deemed material.  *See Bennett*, 776 N.E.2d at 1271.  Due to the material misrepresentation contained on the application for insurance, Globe may declare the policy void from its inception.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Globe American Casualty Company's Motion for Summary Judgment [Doc. 36] is hereby **GRANTED**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Plaintiff Globe American Casualty Company stating that it has no duty to defend or indemnify any of the Defendants for claims arising from the June 10, 2002 accident. Further, insurance policy held by Ms. Reynolds is declared void from its inception.  The clerk shall treat this civil action as **TERMINATED.**  All further settings in this action are hereby

**VACATED.**

      **SO ORDERED**.

ENTERED: May 1, 2005.

                                                  s/ Philip P. Simon  
                                                  PHILIP P. SIMON, JUDGE  
                                                  UNITED STATES DISTRICT COURT